AO 91 (Rev. 11/11) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Eastern District of Tennessee

| United States of America | ) | |
|---|---|---|
| v. | ) | |
| HILARIO PARRA | ) | Case No. 3:25-MJ-1039 |
| | ) | |
| | ) | |
| | ) | |
| *Defendant(s)* | ) | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of **February 10, 2025** in the county of **Knox** in the **Eastern** District of **Tennessee**, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 841(a)(1), and 841(b)(1)(B) | Possession with intent to distribute 500 grams or more of a mixture and substance containing a detectable amount of cocaine |

This criminal complaint is based on these facts:
See attached affidavit, incorporated herein.

☑ Continued on the attached sheet.

_____
*Complainant's signature*

Jason Klingler DEA Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 2/13/2025

City and state: Knoxville, TN

_____
*Judge's signature*

DEBRA C. POPLIN, United States Magistrate Judge
*Printed name and title*

# AFFIDAVIT

3:25-MJ-1039

1. I, Jason Klingler, a Special Agent ("SA") with the Drug Enforcement Administration, and being duly sworn, depose and state the following:

2. I am a Special Agent employed by the United States Drug Enforcement Administration and am an investigator/law enforcement officer of the United States within the meaning of Title 21, United States Code, Section 878, and am empowered to conduct investigations of, and make arrests for, the offenses enumerated in Title 21 and Title 18. I have been a Special Agent with DEA since February 2010 and prior to that I was a police officer with the City of Aurora Police Department, in Aurora, Colorado, for approximately nine years, seven years of which were spent in the Aurora Police Department's Vice and Narcotics Unit.

3. Prior to becoming a Special Agent, I attended the DEA nineteen-week training academy located in Quantico, Virginia. While at the DEA training academy, I received instruction in investigative techniques, drug identification, and the laws pertaining to drug investigations. Following the completion of the DEA academy I was assigned to the DEA Phoenix Divisional Office, where I focused on Mexican based drug trafficking organizations from 2010 to 2017. I was then assigned to the Bogotá Country Office located in Bogotá, Colombia from 2017 to 2022, where I focused on international drug trafficking organizations and their money laundering operations. I am currently assigned to the Knoxville District Office to investigate large-scale narcotic trafficking organizations.

4. During the course of my law enforcement career, I have conducted numerous investigations into illegal drug distribution conspiracies, participated in many arrests of individuals for drug related offenses, and have participated in many drug-related search warrants. Throughout these investigations I have performed many functions including:

a. Functioning as a surveillance agent, observing and recording movements of persons suspected of trafficking in drugs;

b. Participating in the tracing of monies and assets obtained by drug traffickers from the illegal sale of drugs (laundering of monetary instruments);

c. Interviewing witnesses, cooperating individuals and informants relative to the illegal trafficking of drugs and the distribution of monies and assets derived from the illegal trafficking of drugs (laundering of monetary instruments);

d. Functioning as a case agent, entailing the supervision of specific investigations involving the trafficking of drugs and the laundering of monetary instruments;

e. Conducting wiretap investigations involving the court-authorized interception of telephones. During the course of the wiretap investigations, I have performed toll analysis on target telephone numbers, authored electronic surveillance affidavits, and wiretap affidavits. In addition, I have been a wire room supervisor responsible for passing intelligence learned from intercepted conversations to surveillance agents.

5. I worked in an undercover capacity for approximately seven (7) years, during which time I conducted no fewer than one hundred (100) controlled purchases of illegal substances to include, but not limited to, methamphetamine, cocaine, crack cocaine, heroin and marijuana. Many of these controlled purchases began with the use of a telephone to conduct conversations in coded and/or circumspect language with which the drug traffickers and I were familiar. These coded conversations detailed the type of drug, the amount, and the meeting location involved in the transaction.

6. I am submitting this affidavit for the limited purpose of establish probable cause for the arrest of HILARIO PARRA ("PARRA"), for possession with intent to distribute 500 grams or more of a

2

mixture and substance containing a detectable amount of cocaine, a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(B).

7. The facts in this affidavit are based upon my personal knowledge, as well as knowledge, information, and documentation that I obtained from other law enforcement officers. Since this affidavit is being submitted for the limited purpose of establishing probable cause, it does not include every fact known to me or to other law enforcement officers regarding this matter.

## PROBABLE CAUSE

8. Law enforcement began an investigation of PARRA in or around November of 2023, after law enforcement learned that PARRA was likely involved in money laundering and/or drug trafficking.

9. In or around late January and early February of 2025, law enforcement learned from reliable confidential source ("CS")[1] that PARRA was expecting a shipment of cocaine to be delivered in a vehicle from California to the Eastern District of Tennessee. The CS told law enforcement that PARRA was expecting a Hyundai SUV, with a hidden compartment, to be delivered to the parking lot of a Lowes store in the Eastern District of Tennessee. The CS told law enforcement that the hidden compartment inside that vehicle would contain approximately 5 kilograms of cocaine. The CS told law enforcement that PARRA was going to drive the vehicle with the hidden cocaine to a nearby parking lot where he would unload the cocaine from the undercarriage of the vehicle. Law enforcement obtained recorded conversations between the CS and PARRA discussing the upcoming delivery of cocaine to PARRA. Specifically, law enforcement learned from the recorded calls that PARRA was expecting the cocaine to be delivered in a hidden compartment inside a vehicle. For example, on January 27, 2025, in a recorded conversation, PARRA stated that a "Hyundai SUV was going to be used to transport 5" or words that effect. Based on my training and experience, and the context within

---

[1] The CS has been cooperating with law enforcement for several months, and the information that they have provided to law enforcement has repeatedly been corroborated by law enforcement investigation as true. The CS began working with law enforcement after they were confronted with evidence that they were involved in drug trafficking and is likely hoping to avoid lengthy punishment for their illegal activities.

3

this case, I believe that during this conversation, PARRA was stating that 5 kilograms of cocaine would be hidden inside of a Hyundai SUV. In another recorded conversation on or about February 10, 2025, PARRA described the process for accessing a trap compartment within a vehicle and mentioned needing a "10" and a "14." Based on my training and experience, and the context within this case I believe that "10" and "14" referred to 10 and 14 millimeter socket wrenches that would be used to access the hidden compartment in a vehicle.

10. On or about February 10, 2025, law enforcement conducted surveillance of a truck carrying several vehicles that arrived in the Eastern District of Tennessee. One vehicle, a Hyundai Sante Fe, ("SUV") was offloaded at a Lowes parking lot in the Eastern District of Tennessee. Law enforcement observed PARRA arriving at the scene, speaking with the truck driver, and retrieving a tool bag from the vehicle he arrived in, and placing the tool bag and a car jack in the back of the SUV. PARRA then drove the SUV to an empty parking lot. PARRA drove around the empty parking lot, returned to the Lowes parking lot, and then drove around adjacent parking lots. Based on my training and experience I believe that PARRA's unusual driving behavior was an effort to determine if law enforcement was surveilling him. Ultimately, in a recorded conversation PARRA indicated that he believe he was being surveilled, and he parked the car and walked around the parking lot on foot and looked closely at several vehicles. PARRA, after stating he believed that that he was being surveilled, ultimately moved the SUV to another public location and left the SUV there. PARRA later returned to the SUV, walked near the vehicle, and began to look into other vehicles in the parking lot, in a manner I believe was designed to look for law enforcement. PARRA then left that location again, without accessing the SUV.

11. Law enforcement conducted a K-9 sniff of the vehicle. The K-9 alerted on the vehicle to the presence of a controlled substance. Law enforcement then conducted a search of the vehicle, accessed the hidden trap compartment in the vehicle, and discovered approximately 5 kilograms of a white powdery substance. Law enforcement removed the suspected cocaine from the hidden compartment.

4

Law enforcement observed that the trap compartment was best accessed using 10 and 14 millimeter socket wrenches. Law enforcement conducted a field test on the powdery substances and determined that it was cocaine.

12. On or about February 11, 2025, law enforcement observed that the vehicle had been moved to yet another location. On or about February 12, 2025, law enforcement observed PARRA return to the vehicle, carrying a tool bag. PARRA placed the tool bag in the SUV. Law enforcement observed PARRA drive around the parking lot in the SUV, and then park the SUV. PARRA exited the SUV carrying a tool bag. PARRA was arrested. Inside the tool bag that PARRA was carrying were a 10 millimeter socket wrench and a 14 millimeter socket wrench.

Jason Klingler, SA
DEA

Sworn and subscribed before me on
February 13, 2025, in Knoxville, TN.

DEBRA C. POPLIN
UNITED STATES MAGISTRATE JUDGE